## Commonwealth of Massachusetts

SUFFOLK, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2184 CV 01323

__Kamika Marsh__, PLAINTIFF(S),

v.

efiled 8/30/2021 hd

__Compass Group USA, Inc. and Massachusetts Convention Center Authority__, DEFENDANT(S)

### SUMMONS

THIS SUMMONS IS DIRECTED TO __Compass Group USA, Inc.__ (Defendant's name)

<u>You are being sued.</u> The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the __Suffolk Superior__ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. <u>**You must respond to this lawsuit in writing within 20 days.**</u> If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court __and__ mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
   a. Filing your **signed original** response with the Clerk's Office for Civil Business, __Suffolk__ Court, __Superior, 12th Floor, Three Pemberton Square__ (address), by mail or in person, **AND** __Boston, MA 02108__
   b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: __Rachel Smit, Fair Work, 192 South Street, Suite 450, Boston, MA 02111__

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

21005860

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on ___June 17___, 20_21_.

*Michael Joseph Donovan*
Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS



Suffolk County Sheriff's Department • 132 Portland Street, Boston, MA 02114 • (617) 704-6999

*Suffolk, ss.*

June 22, 2021

I hereby certify and return that on 6/22/2021 at 8:40 AM I served a true and attested copy of the Summons, Complaint and Cover Sheet in this action in the following manner: To wit, by delivering in hand to Bernardo Montanez, agent and person in charge at the time of service for Compass Group USA Inc., at 84 State Street Corporation Service Company Boston, MA 02109 . Attest/Copies ($5.00) Basic Service Fee (IH) ($30.00) Conveyance ($0.30) Postage and Handling ($1.00) Travel ($1.00) Total: $37.30

Deputy Sheriff   Joseph Casey

*Joseph P Casey*
_____
Deputy Sheriff

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT

SUFFOLK, ss.                                                    Civil Action No.

| | |
|---|---|
| KAMIKA MARSH, | ) |
| Plaintiff | ) |
| v. | ) *6/9/2021* |
| COMPASS GROUP USA, INC. d/b/a LEVY RESTAURANTS and MASSACHUSETTS CONVENTION CENTER AUTHORITY, | ) |
| Defendants | ) |

## COMPLAINT AND JURY DEMAND

### Introduction

1. This lawsuit is brought by Kamika Marsh, a Black woman who took proactive steps to protect herself from the potentially lethal consequences of racial profiling by public safety officers, whose job was to keep her and other employees who worked in the Hynes Convention Center, as well as members of the public, safe.

2. After Marsh alerted her employer, Levy Restaurants, about the manner in which she and her family had been racially profiled by public safety officers employed by the Massachusetts Convention Center Authority ("MCCA"), an "investigation" conducted by Levy Restaurants determined that Marsh had failed to cooperate in a

1

professional manner with the MCCA; shortly after, Marsh was fired from her position as a banquet manager.

3.  Marsh alleges that her employer, Compass Group USA, Inc. d/b/a Levy Restaurants ("Levy Restaurants") and the Massachusetts Convention Center Authority, violated Massachusetts General Laws chapter 151B, § 4(1) by discriminating against her in terms, conditions and privileges of employment because of her race.

4.  Marsh also alleges that Levy Restaurants violated Massachusetts General Laws chapter 151B, § 4(1) by discharging her from employment because of her race.

5.  Marsh further alleges that Levy Restaurants violated Massachusetts General Laws chapter 151B, §4(4) by discharging her from employment because she opposed practices forbidden by Chapter 151B and violated § 4(4A) by interfering with her exercise and enjoyment of the rights granted and protected by Chapter 151B.

**Parties**

6.  Plaintiff Kamika Marsh is an adult resident of Suffolk County, Massachusetts. From June 2018 until May 2019, Ms. Marsh was employed by Levy Restaurants as a banquet manager at the Hynes Convention Center in Suffolk County, Massachusetts.

7.  Defendant Compass Group USA, Inc. d/b/a Levy Restaurants is a Delaware corporation with a principal office in Charlotte, North Carolina, which is registered to provide food services and vending in Massachusetts as a foreign corporation. Compass Group USA owns and operates Levy Restaurants, along with other US-based brands such as Bon Appetit and Wolfgang Puck. Compass Group USA

is a division of Compass Group PLC, a UK-based multinational corporation. Compass Group is the largest food services company in the world.

8. Defendant Massachusetts Convention Center Authority ("MCCA") is an independent public authority of the Commonwealth of Massachusetts. The MCCA owns and operates the Hynes Convention Center located in Suffolk County, Massachusetts.

### Jurisdiction and Venue

9. Jurisdiction is proper in this Court pursuant to M.G.L. c. 212, §§ 3 and 4, because this is a civil action for money damages and there is a reasonable likelihood that recovery by the Plaintiff will exceed $50,000.

10. Venue is proper in Suffolk County pursuant to M.G.L. c. 151B, § 9, because the alleged unlawful practices occurred in Suffolk County.

### Facts

11. Kamika Marsh was hired by Levy Restaurants as a banquet manager in June 2018.

12. As a banquet manager, Marsh was responsible for overseeing food and beverage service for events scheduled at the Hynes Convention Center; her responsibilities included scheduling and supervising hourly wait staff employees.

13. Marsh supervised between 15 and 35 hourly, unionized employees on a daily basis.

14. Marsh was a salaried management employee who worked long hours; this frequently entailed opening and closing events, which meant she was often in the

Hynes Convention Center late at night or early in the morning when the building was mostly empty.

15. Marsh worked hard to gain the respect of the employees she supervised.

16. Marsh is a Black woman.

17. Most of the employees that Marsh supervised are Black men.

18. The individuals who supervised Marsh are all white men: Jayson Goldstein, General Manager; Thomas Houllahan, Assistant General Manager; and Sean O'Hare, Director of Banquets, who was Marsh's direct supervisor.

19. Marsh frequently found herself in the position of relaying concerns raised by her primarily Black employees to her white supervisors.

20. The typical response from Goldstein and Houllahan was that Marsh should ignore the issues being raised by her staff and on at least one occasion Houllahan said, "These guys are lazy, they get paid a lot of money to do their jobs."

21. Marsh understood Houllahan's comment about the laziness of her staff to reflect racist stereotypes about Black men, but she chose not to mention her concerns at the time.

22. In the Management Performance Appraisal conducted by her direct supervisor, Sean O'Hare on October 25, 2018, Marsh was described as being "On Target" with her job performance in areas ranging from "Creates an environment that inspires and recognizes creativity and innovation" to "Ensures team members have the tools necessary to complete their jobs" to "Keeps a positive attitude while staying

motivated to perform above what is minimally expected which in turns leads to feelings of personal accomplishment."

23. The only area in which Marsh was rated as being "Below Target" was "Communicates effectively and regularly in an open, honest, and welcoming manner."

24. O'Hare, who wrote the evaluation, was sympathetic to Marsh and said that he recognized her passion and her commitment to her staff, but counseled her to bring up fewer issues with the rest of the management team, stating that, "I want to help you succeed because I do not want you to be perceived as an angry black woman."

25. Marsh understood O'Hare to be giving her a heads-up that she was being perceived by his (and her) superiors as an angry black woman.

26. Marsh was never the subject of any warnings, reprimands, or disciplinary actions prior to April 2019.

27. On April 9, 2019, one of Marsh's best friends and two children stopped by the convention center to see Marsh during her break. The best friend has been close to Marsh for approximately 25 years and Marsh refers to her as her sister. The friend's children are Marsh's godchildren. Collectively, she refers to them as her family.

28. Marsh's sister and godchildren are Black.

29. Unbeknownst to Marsh, during the April 9 visit her sister was parked in a fire lane outside the Hynes Convention Center.

30. During the approximately 15 minutes Marsh was in the vehicle with her family, two public safety officers approached the vehicle at different times.

5

31. The first public safety officer recognized Marsh, made a joke, and walked away.

32. The second public safety officer opened the interaction with an aggressive tone, despite claiming to have recognized Marsh's sister as a Levy employee, stating "I know exactly who you are – you work for Levy." Marsh responded by exiting the vehicle at which point she asked the officer whether she or her sister was the Levy employee. The officer became defensive, accused Marsh of being hostile, and told her that they could not be there. As a result of the officer's behavior, the brief interaction was antagonistic and left Marsh feeling uneasy, but she decided not to report it because it seemed to be an isolated incident.

33. On April 15, 2019, the day of the Boston Marathon, Marsh was at work in her office when her sister called to say that she and the kids were in the area and had brought a lunch for her. Marsh invited them up to her office so that they could eat together and watch the Boston Marathon.

34. Marsh met her family at the Prudential Center entrance to the building, where they passed by a public safety officer, who said nothing about restricted access to the building.

35. After eating together in her office, Marsh walked her family to the Boylston hallway, so that they could take pictures of the Boston Marathon.

36. After about 10 minutes a public safety officer approached them, recognized Marsh, and said "Oh, it's just you," and walked away.

37. About 5 minutes later, a second public safety officer approached them and asked Marsh, in an aggressive tone, if she worked for Levy.

38. Marsh responded that yes, she worked for Levy, at which point the officer stated that she needed to leave and could not be in the building.

39. Marsh immediately used her cell phone to call Joclynne Bynoe, the Senior Event Service Manager at Hynes Convention Center to ask if she was allowed to be in the building – in the Boylston Street hallway – and to let Bynoe know that she would leave if she was not allowed to be there.

40. Bynoe told Marsh it was fine for her and her family to be there, at which point Marsh passed her cellphone to the public safety officer, so that he could hear the message directly from an MCCA manager.

41. During the conversation with Bynoe, the officer became visibly irate and left.

42. About 10 minutes after that interaction, the same officer returned and ordered them to leave.

43. Marsh felt insulted and embarrassed to be asked to leave her own office building in front of her family, so she invited them to return to her office with her.

44. At that point, Marsh decided that the two incidents with public safety were not isolated and that she needed to address them because she relied on public safety officers to keep her safe when she worked late at night and early in the morning.

45.     On April 17, 2019, Marsh approached O'Hare to report the incidents. O'Hare suggested that she speak with Goldstein, who asked Marsh to write up a statement for him.

46.     As requested, Marsh emailed Goldstein on April 17, 2019, to report the April 9 and April 15 incidents, in which she explicitly stated that she believed her race was a factor in how the public safety officers had treated her; she further suggested that she would be willing to attend a meeting with the head of public safety, the general manager of the MCCA, and the public safety officers involved to discuss the issues she was raising.

47.     On April 19, 2019, Marsh was suspended pending investigation of her complaints about the April 9 and April 15 incidents; the management team assured Marsh that the suspension was not a disciplinary action, but rather a safety precaution so that Marsh would not be concerned about public safety officers retaliating against her.

48.     On April 24, 2019, upon her return to work, Marsh met with Goldstein, Houllahan, and Terri Ronco, Assistant Human Resource Manager for Levy Restaurants, and was told that the investigation had resulted in disciplinary action against Marsh in the form of a first and final warning for having violated MCCA's Code of Conduct during the April 9 and April 15 incidences that Marsh had reported to Goldstein.

49.     During the April 24 meeting, Marsh began crying and voiced her concerns that it was unfair to be disciplined for having reported safety concerns to her

supervisors, that she did not understand what part of the MCCA's Code of Conduct she had violated, and that she felt like she was being attacked.

50. At no point were Marsh's concerns about racial profiling addressed by her managers.

51. During the April 24 meeting, Goldstein informed Marsh that the warning meant that "if any of your superiors ask you to do something, you need to do it without lip."

52. After that meeting, it became clear to Marsh that she had a target on her back, but she continued to do her work professionally and with the same strong working relationships with her staff that she had consistently maintained throughout her employment.

53. On May 21, 2019, Marsh was called into another meeting with Goldstein, Houllahan, and Ronco and given another written notice that she was being suspended pending an investigation – this time into various allegations concerning Marsh's attendance, incomplete work, and disrespectful manner toward hourly team members.

54. The explanation provided by Houllahan for the referenced "disrespectful" manner toward hourly team members was a single interaction that Houllahan had witnessed between Marsh and one of her employees named Darrell Singletary. Houllahan informed Marsh that they could not afford to have Singletary, a shop steward for the union, be upset with his direct supervisor.

55. A few days after the May 21, 2019, meeting, Singeletary, who is Black, called Marsh to ask her why she was not at work. Marsh told him that she had been

9

suspended.  Singletary, with whom Marsh had always gotten along well, told Marsh that Houllahan had just asked him to write up a complaint against Marsh.  Singletary refused to make a complaint against Marsh because he had not perceived the interaction with Marsh to be disrespectful.

56. Despite an utter lack of corroboration for the conduct referenced in the May 21 suspension, Levy Restaurants terminated Marsh from her employment on May 30, 2019.

57. The final disciplinary report states that the investigation could not substantiate the alleged attendance and incomplete work that formed the basis for the May 21 suspension, but cited "Kamika's disrespectful interactions" with both "hourly and management team members" as the basis for the termination.

## Exhaustion of Administrative Remedies

58. On January 1, 2019, Plaintiff filed a charge of discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC") and the Massachusetts Commission Against Discrimination ("MCAD").

59. On September 21, 2020, Plaintiff received a letter from the MCAD stating that the processing of the complaint would be conducted by the EEOC and that the MCAD would not separately investigate the complaint.  The letter further advised Plaintiff that she may have the right to file a complaint in court pursuant to M.G.L. c. 151B, § 9.

60. The EEOC notified Plaintiff on August 24, 2020, that it had completed its processing of her charge.

## Count I:
## Discrimination Because of Race
## in Terms, Conditions and Privileges of employment
## M.G.L. c. 151B, § 4(1)

61. Plaintiff Kamika Marsh alleges and incorporates by reference paragraphs 1 to 60.

62. The conduct of Defendants Levy Restaurants and the Massachusetts Convention Center Authority constitutes unlawful discrimination against Plaintiff Kamika Marsh in violation of M.G.L. c. 151B, § 4(1). This claim is brought pursuant to M.G.L. c. 151B, § 9.

## Count II:
## Discharge from Employment Because of Race
## M.G.L. c. 151B, § 4(1)

63. Plaintiff Kamika Marsh alleges and incorporates by reference paragraphs 1 to 60.

64. Defendant Levy Restaurants violated of M.G.L. c. 151B, § 4(1) by discharging Marsh from her employment because of her race. This claim is brought pursuant to M.G.L. c. 151B, § 9.

## Count III:
## Retaliation
## M.G.L. c. 151B, §§ 4(4) & 4(4A)

65. Plaintiff Kamika Marsh alleges and incorporates by reference paragraphs 1 to 60.

66. Defendant Levy Restaurants violated M.G.L. c. 151B, § 4(4) by discharging her from employment because she opposed practices forbidden by Chapter 151B and

violated § 4(4A) by interfering with Marsh's exercise and enjoyment of the rights granted and protected by Chapter 151B. This claim is brought pursuant to M.G.L. c. 151B, § 9.

## JURY DEMAND

Plaintiff Kamika Marsh requests a trial by jury.

WHEREFORE, Plaintiff Kamika Marsh respectfully requests this Court to:

A. Award damages to Plaintiff for her lost wages;

B. Award damages to Plaintiff for her emotional and mental distress;

C. Award punitive damages to Plaintiff;

D. Award attorneys' fees and costs to Plaintiff;

E. Award pre- and post-judgment interest to Plaintiffs; and

F. Grant such other relief as is just and proper.

KAMIKA MARSH,

By her attorneys,

/s/Rachel Smit
Rachel Smit, BBO #688294
Hillary Schwab, BBO #666029
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
hillary@fairworklaw.com
rachel@fairworklaw.com

Dated: June 9, 2021